UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PDL, Inc., d/b/a ALLSTARS SCHOOL OF DRIVING,

        Plaintiff,

    v.

ALL STAR DRIVING SCHOOL, GARY EMBREE, KIMBERLY EMBREE, AND MARIVEL GALICIA,

        Defendants.

NO. CIV. S-07-0102 WBS GGH

ORDER RE: MOTION FOR PRELIMINARY INJUNCTION

----oo0oo----

        Plaintiff PDL, Inc., d/b/a Allstars School of Driving ("Allstars") brought this action alleging trademark infringement and various other state and federal claims stemming from defendants All Star Driving School's ("All Star") use of the "All Star Driving School" mark.  Plaintiff now moves for a preliminary injunction against defendants' continued use of the allegedly infringing mark.

///

1

I.   Factual and Procedural Background

      Plaintiff Allstars is a California corporation founded in 1985 with its principal place of business in San Jose, California. (Wright Decl. ¶ 2.) Allstars is licensed by the California Department of Motor Vehicles ("DMV") to provide driver education and training, and since 1985 has been offering and delivering such training in San Jose, Fremont, Morgan Hill, and Los Gatos. (Id. ¶ 4.) Since its formation, Allstars has provided driver education to approximately 400,000 students. (Id.) Allstars uses "Allstars School of Driving" as its trade name and service mark, promoting its services under that name in San Jose, Fremont, Morgan Hill, and Los Gatos via newspapers, telephone books, local circulars, at high schools, and on the radio. (Id.) Since 1996, Allstars has also promoted its services under that mark on its website located at "allstars-sanjose.com." (Id. ¶ 8.)

      In addition, since January, 2003, Allstars has offered internet-based online driver education. (Id. ¶ 9.) These services have been promoted, under the "Allstars School of Driving" mark, by targeting consumers in particular areas throughout California by bidding on geographically-specific keywords from online search engines. (Id. ¶ 10.)[1] Between January, 2003, and July, 2003, Allstars sold online driver

---

[1] Examples of the keywords bid on by Allstars are "Sacramento Drivers School," "Folsom Drivers School," "Roseville Drivers School," etc. (Wright Decl. ¶ 11.) When a consumer types one of these keywords into a search engine, the page listing the search results will contain an advertisement for Allstars' services with a link to their online education services.

2

education services to several hundred Sacramento area residents. (Id. ¶ 14.)  In March, 2004, Allstars began providing on-the-road training to greater Sacramento area consumers, and in July, 2005, it opened an office in Rocklin, California.  (Id. ¶ 4.)

Defendant All Star Driving School ("All Star"), owned and operated by defendants Gary and Kimberly Embree, began offering driver education and training in the Sacramento area in July, 2003.[2]  (Embree Decl. ¶ 5.)  Since that time, defendants have actively promoted their business under the trade name "All Star Driving School" in telephone books, local circulars, internet "yellowpages," and beginning in 2004 through its website located at "driveallstar.com."  (Id. ¶ 6.)  Since July, 2003, defendants have provided driver education and training services to approximately 800 consumers in Sacramento, El Dorado, Amador, Placer, Sutter, and Yolo counties.  (Id. ¶ 7.)

On January 16, 2007, plaintiff filed this action based on defendants' use of the "All Star Driving School" mark, alleging: 1) trademark infringement (15 U.S.C. § 1125(a)); 2) false designation of origin (15 U.S.C. § 1125(a)); 3) trademark infringement (Cal. Bus. & Prof. Code § 14320); 4) common law trademark infringement; 5) unfair competition and "passing off"; and 6) injury to business reputation.  (Compl.)  Plaintiff now asks this court to enjoin defendants from any and all continued use of the "All Star Driving School" mark.

---

[2] Defendants' license to provide driver training services was not issued until September, 2003.  However, while All Star began promoting their business in July, 2003, they did not actually provide in-car driver training until they were properly licensed.  (Embree Decl. ¶ 5.)

3

II.  Discussion
    A.  Legal Standard

        "To obtain a preliminary injunction, the moving party must demonstrate either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships sharply favors the moving party.  These are not separate tests, but are the ends of a continuum; the greater the relative hardship to the moving party, the less probability of success must be shown."  Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S., 743 F.2d 1365, 1369 (9th Cir. 1984) (internal citations omitted).  "Irreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim."  Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1066 (9th Cir. 1999) (citing Metro Pub., Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993)).  For trademark infringement, the inquiry thus conflates the two prongs "into the single question of whether the plaintiff has shown a likelihood of success on the merits."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 n.4 (9th Cir. 2000).

    B.  Laches

        Defendants argue that plaintiff is prohibited from bring this action by the doctrine of laches.  Laches may bar a trademark infringement claim when plaintiff unreasonably delays bringing suit.  E-Systems, Inc. v. Monitek, Inc., 720 F.2d 604, 607 (9th Cir. 1983).  Although plaintiff alleges that it began providing on-the-road training in the greater Sacramento as early as March of 2004, and opened an office in Rocklin in July of

4

2005, plaintiff curiously alleges that it did not become aware of defendants' company until more than a year later. However, there is no evidence in the record that plaintiff had knowledge, either real or constructive (i.e. through registration of the mark), prior to when asserted. Nor had there been any showing that plaintiff engaged in any knowing delay, and plaintiff appears to have been reasonably diligent in protecting his mark, bringing this action shortly after learning of defendants' company. (Ballard Decl. Ex. C.)

C. Voluntary Cessation

In their opposition to this motion, defendants indicate that they have begun the process of changing their company name to "Freedom Driving School," including: changing the name on their business license; re-labeling their business assets; re-registering with the DMV; placing a prominent link on "driveallstar.com" that redirects to "drivewithfreedom.com;" and changing the outgoing message on their business answering machine to reflect the change in name. (Embree Decl. ¶¶ 11-15.) Plaintiff, nevertheless, reasserts its request for an injunction. Particularly because defendants' promotional efforts continue to make mention of the "All Star" mark, plaintiff's motion is not moot. See also Fed. Trade Comm'n v. Affordable Media, LLC, 179 F.3d 1228, 1237 (9th Cir. 1999) (noting the well settled practice that an action for an injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence).

D. Probability of Success on the Merits

The core element of trademark infringement is whether

5

1  customers would be confused between the protected and the
2  allegedly infringing mark.  <u>Reno Air Racing Ass'n, Inc. v.</u>
3  <u>McCord</u>, 452 F.3d 1126, 1135 (9th Cir. 2006); <u>Official Airline</u>
4  <u>Guides, Inc. v. Goss</u>, 6 F.3d 1385, 1394 (9th Cir. 1993).
5  Although the list of factors is not exhaustive, and the test is a
6  pliant one depending on the circumstances of each specific case,
7  in determining whether customer confusion exists, the court looks
8  to the following factors: 1) strength of the mark; 2) proximity
9  of the goods; 3) similarity of the marks; 4) evidence of actual
10 confusion; 5) marketing channels used; 6) type of goods and the
11 degree of care likely to be exercised by the purchaser; 7)
12 defendants' intent in selecting the mark; and 8) likelihood of
13 expansion of the product lines.
14         Upon consideration of the <u>Sleekcraft</u> factors, this
15 court finds that there is a likelihood of customer confusion
16 stemming from defendants' use of the "All Star" mark.  While not
17 dispositive, this conclusion is bolstered by defendants'
18 counterclaims, which are based on many of the same assertions put
19 forth by plaintiff in support of this motion, as to the
20 similarity of the marks, proximity of the goods, actual confusion
21 encountered, and similarity of the marketing channels used.
22 (Defs' Counterclaim ¶¶ 18, 22, 23.)  In a trademark infringement
23 action, irreparable harm is presumed, and plaintiff has
24 demonstrated a likelihood of success on the merits.  Accordingly,
25 the court will grant plaintiff's motion.
26         IT IS THEREFORE ORDERED that the plaintiff's motion for
27 a preliminary injunction be, and the same hereby is, GRANTED.
28 Pending the entry of final judgment in this action, upon the

1  posting by plaintiff of security in the amount of $2,500.00,
2  defendants and their officers, agents, servants, employees,
3  attorneys and those persons in active concert or participation
4  with them are hereby enjoined from (1) using the phrase
5  "Allstars" or "All Star" as the name or part of the name of any
6  business, or in a trade name or trademark of any business, that
7  offers or in any way relates to driving education or training,
8  and/or (2) maintaining a webpage at http://www.driveallstar.com,
9  or any other domain name including the words all star or
10 allstars, without clearly stating on that webpage that defendants
11 and their business are unaffiliated with PDL, Inc. or the
12 Allstars School of Driving.
13 DATED:  May 21, 2007

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE